UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SOHEB SALIM RAMZAW ALI LAKHANI,

Petitioner,

v.

MARKWAYNE MULLIN, *et al.*,

Respondents.

Case No. C26-3324-MLP

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Soheb Salim Ramzaw Ali Lakhani is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He has filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging the constitutionality of his detention. (Dkt. # 1.) Respondents filed a timely return to the petition (dkt. # 5), together with supporting declarations from ICE Deportation Officer Freite Subero (dkt. # 6) ("Subero Decl."), and Respondents' counsel Lawrence Van Daley (dkt. # 7) ("Van Daley Decl."). Petitioner filed a timely traverse in reply. (Dkt. # 8.) The Court, having reviewed the parties' submissions and the governing law, DENIES Petitioner's petition for a writ of habeas corpus (dkt. # 1).

## I. BACKGROUND

Petitioner is a native and citizen of India who entered the United States without inspection on or about September 29, 2024, and was detained by United States Border Patrol ("USBP") near the Canadian Border around Churubusco, New York. (Subero Decl., ¶ 3.) Petitioner was thereafter transported to the Burke Border Patrol Station where he was served with a Notice to Appear ("NTA") charging him with being removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.*; Van Daley Decl., Ex. 1.) Petitioner was initially scheduled to appear for removal proceedings in New York on June 24, 2025 (*see* Van Daley Decl., Ex. 1 at 1), but those proceedings were later scheduled for June 2, 2027, in the Seattle immigration court (Subero Decl., ¶ 3).

After being processed at the Burke Border Patrol Station, Petitioner was released on an Order of Release on Recognizance ("OREC") due to insufficient bed space at the holding facility. (*See* Subero Decl., ¶ 3; Van Daley Decl., Ex. 2.) Officer Subero avers that the terms of Petitioner's release required him to report to ICE, but he does not specify what those requirements were and the documents submitted by Respondents similarly provide no detail regarding the reporting requirements. (*See* Subero Decl., ¶ 4; Van Daley Decl., Ex. 2.) At some point following his release, Petitioner designated Seattle as his reporting location but, according to Officer Subero, DHS has no record of Petitioner ever having checked in with ICE following his release in September 2024. (Subero Decl., ¶ 4.)

On September 4, 2026, ICE's Seattle Office of Enforcement and Removal Operations ("ERO") determined through DHS system queries that there was no record of Petitioner ever having checked in with ICE and it "initiated an investigation to locate and apprehend" him.

(Subero Decl., ¶ 5; Van Daley Decl., Ex. 3 at 2.) That same day, an ICE/ERO Fugitive Operations Team located what was believed to be Petitioner's vehicle, conducted a traffic stop, identified Petitioner from his Washington driver's license, and detained him. (Subero Decl., ¶ 5; Van Daley Decl., Ex. 3 at 2-3.) An ERO supervisor issued a warrant for Petitioner's arrest, though apparently not until after officers had already detained him.[1] (*See* Van Daley Decl., Ex. 3 at 2-3, Ex. 4.) ICE cancelled Petitioner's OREC the same day. (Van Daley Decl., Ex. 5.)

On the date of Petitioner's arrest, a Form I-286 Notice of Custody Determination was issued indicating that a supervisory ICE officer had determined Petitioner would remain detained pending a final administrative determination in his case. (Van Daley Decl., Ex. 4 at 2.) Though the I-286 permits a noncitizen to request a custody determination by an immigration judge, that section of Petitioner's I-286 is largely blank except for a checked box purportedly acknowledging Petitioner's receipt of the notification and a pre-filled date. (*See id.*) The form reflects no specific request regarding a custody determination by an immigration judge; nor does it bear Petitioner's signature. (*See id.*) During processing following his arrest, Petitioner expressed a fear of returning to India and requested that his case be referred to an immigration court for a hearing. (*See* Subero Decl., ¶ 5.)

Petitioner was transferred to NWIPC on the day of his arrest where he remains detained. (Subero Decl., ¶ 5.) Petitioner was scheduled for a master calendar hearing in the Tacoma immigration court on October 7, 2026, but the record before the Court does not reveal the outcome of that hearing. (*See id.* ¶ 6.)

---

[1] The Form I-213 Record of Deportable/Inadmissible Alien submitted by Respondents in support of their return indicates that ERO officers observed Petitioner's vehicle at approximately 9:46 a.m. on the date of his arrest, and "encountered and arrested" him at approximately 10:08 a.m. on September 4, 2026. (Van Daley Decl., Ex. 3 at 2.) The Form I-200 Warrant for Arrest submitted by Respondents indicates it was issued at 10:09 a.m. on the day of the arrest, after Petitioner had already been arrested. (*See* Van Daley Decl., Ex. 3 at 2-3, Ex. 4.)

## II. LEGAL STANDARDS

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner may obtain relief by proving by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III. DISCUSSION

Petitioner asserts in his petition that his re-detention violated his Fifth Amendment right to procedural due process. (Dkt. # 1 at 3.) He seeks immediate release or, in the alternative, an order requiring Respondents to provide a hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence that changed circumstances establish Petitioner presents a danger to the community or a risk of flight. (*See id* at 11-13.) Respondents argue in response that Petitioner's detention is authorized by 8 U.S.C. § 1225(b)(2)(A). (Dkt. # 5 at 5.) They acknowledge, however, that courts in this District have held that a noncitizen released on an OREC is detained under 8 U.S.C. § 1226(a) and that, if the Court follows those decisions, § 1226(a) governs. (*Id.* at 5-6.) Respondents maintain that Petitioner's detention is lawful under either § 1225(b)(2)(A) or § 1226(a).

### A. Statutory Detention Authority

Detention of noncitizens is governed by INA §§ 235-36, 8 U.S.C. §§ 1225-26. Section 1226(a) sets the default rule permitting discretionary detention of noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1225(b) "applies primarily to [noncitizens] seeking entry into the United States ('applicants for admission' in the language of the statute)." *Id.* at 297. Noncitizens are considered "applicants for admission" to the

United States when they "arrive[]" in the United States or are "present" in this country but have "not been admitted." 8 U.S.C. § 1225(a)(1). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287.

Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287 (citing § 1225(b)(1)(A)(i)). Noncitizens who fall under § 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id*. Applicants for admission under either § 1225(b)(1) or § 1225(b)(2) are generally subject to mandatory detention with release only on parole "for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 287.

Respondents assert that Petitioner's detention is governed by § 1225(b)(2) because he is an applicant for admission who entered without inspection, was not admitted or paroled, and was taken into custody by USBP on the day he entered. (Dkt. # 5 at 5.) However, Petitioner's OREC expressly stated that he was being released under "section 236 of the Immigration and Nationality Act," 8 U.S.C. § 1226, and the Notice of Custody Determination issued following Petitioner's re-detention expressly stated as well that he was being detained under the authority of INA § 236 during the pendency of his administrative proceedings. (Van Daley Decl., Ex. 2; Ex. 4 at 2.) Accordingly, and consistent with prior decisions of courts in this District, this Court finds that Petitioner's detention falls under § 1226(a). *See Herrera Gomez v. Wamsley*, 2026 WL

279966, at * 2 (W.D. Wash. Feb. 3, 2026); *Singh v. Wamsley*, 2026 WL 248372, at *1 (W.D. Wash. Jan. 30, 2026). The Court now turns to Petitioner's due process claim.

**B. Due Process**

The Fifth Amendment's Due Process Clause forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)). Due process is "flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025).

*1. Private Interest*

The Court first considers Petitioner's private interest. Respondents acknowledge that Petitioner's liberty has "real weight," but suggest that his private liberty interest is diminished because it is conditional. (Dkt. # 5 at 8.) The Supreme Court has consistently recognized the significance of an individual's interest in freedom from detention, *see Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."), *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (the interest in not being detained "is the most elemental of liberty

interests”). The Supreme Court has also “repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.” *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citations omitted). The first *Mathews* factor thus favors Petitioner.

*2. Risk of Erroneous Deprivation*

The Court next considers the risk of an erroneous deprivation and the value of additional safeguards. Respondents assert that the risk of an erroneous deprivation is low here because the ground for revocation of Petitioner’s release is “a records fact,” in that ERO records show Petitioner never checked-in with ICE following his release in September 2024, despite being served with the reporting conditions at the time his OREC was issued. (Dkt. # 5 at 8.) Respondents maintain that a pre-deprivation hearing would have added little as it would have simply re-visited the record, rather than resolved any contested facts. (*Id.*) Respondents further assert that Petitioner’s failure to report made advance notice of the proposed revocation of his release impractical because ERO had no “reporting contact” through which to serve such a notice. (*Id.* at 8-9.) Respondents maintain that they could not convene the hearing suggested in the petition without first accomplishing Petitioner’s arrest. (*Id.* at 9.)

Petitioner acknowledges that his release imposed conditions, and he appears to concede that he did not complete every required check-in, though he stops short of admitting, as Respondents allege, that he never checked-in at all. (*See* Dkt. # 8 at 3.) He asserts, however, that even if non-reporting is established, a neutral decisionmaker must still determine whether the conduct demonstrates a present flight risk and whether conditions short of confinement can reasonably assure his appearance. (*See id.* at 3, 8.) Petitioner further asserts that Respondents have not established that pre-deprivation notice was impracticable simply because of the absence

of check-ins, noting that Officer Subero's declaration establishes only an alleged lack of reporting, "not the categorical impossibility of reaching Petitioner by other means." (*Id.* at 8-9.)

The Court is not persuaded that in the circumstances presented here there was a significant risk of an erroneous deprivation under existing procedures. This is not a case in which Respondents rely on a series of intermittent violations over a period of years to justify an apparently arbitrary arrest. Here, Respondents allege a wholesale failure of Petitioner to comply with reporting requirements during the entirety of the 23-month period he was on the OREC, an allegation Petitioner does not effectively rebut. (*See* dkt. # 5 at 8; Subero Decl., 4.) This led ERO to initiate an investigation directed at locating and apprehending Petitioner which resulted in Petitioner's return to custody. (*See* Van Daley Decl., Ex. 3 at 2.) Arresting and detaining Petitioner based upon his failure to comply with the reporting conditions pursuant to which he was released falls squarely within ICE's purview under § 1226(a).

Petitioner asserts that even if pre-deprivation process was not required here, an absence of post-deprivation process justifies relief. (Dkt. # 8 at 9-10.) Petitioner claims that he requested a custody review on the date of his re-detention and has not yet received it, and he contends that due process requires a prompt post-arrest hearing. (*See id.* at 9-10.) Petitioner appears to base this claim on a statement by Officer Subero in his declaration to the effect that on the date of Petitioner's arrest, he requested that his case be referred to an immigration court for a hearing. (*See id.* at 10; Subero Decl., ¶ 5.) It appears Petitioner has misconstrued the record.

Officer Subero's statement, when read in context, suggests Petitioner requested a hearing before an immigration judge in relation to his removal proceedings, not in relation to ICE's custody determination. This reading is consistent with the fact that Petitioner was served with a Form I-826 Notice of Rights and Request for Disposition on the date of his arrest which would

have afforded him an opportunity to request such a hearing. (*See* Van Daley Decl., Ex. 3 at 4.) It is further consistent with the fact that though Petitioner was also served with a Form I-286 Notice of Custody Determination which provided him an opportunity to request review of his custody by an immigration judge, he made no such request. (*See id.*, Ex. 4 at 2.) The Court sees no value in providing additional or substitute procedural safeguards at this juncture when Petitioner did not avail himself of those to which he had access at the outset of his detention. Section 1226(a) and governing regulations expressly provide that a noncitizen can seek an initial redetermination by an IJ, *see* 8 C.F.R. § 236.1(d)(1), and subsequent bond redeterminations whenever the noncitizen's "circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e). Nothing in the record suggests Petitioner is prevented from pursuing those statutory avenues, even today.

For the foregoing reasons, the second *Mathews* factor weighs in Respondents' favor.

*3. Governmental Interest*

Finally, the Court now considers the government's interest. The government has a strong interest in preventing noncitizens from "remain[ing] in the United States in violation of our law," *Demore*, 538 U.S. at 518 (quotations omitted), as well as an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community," *Zadvydas*, 533 U.S. at 690. The Ninth Circuit, in *Rodriguez Diaz*, describes these as 'interests of the highest order." 53 F.4th at 1208. As the government's interests are significant, and as § 1226(a) already provides substantial procedural protections for individuals such as Petitioner who are detained pending removal proceedings, the Court finds that the third *Mathews* factor weighs in Respondents' favor.

In sum, only one of the *Mathews* factors weighs in favor of Petitioner and two of the factors weigh in favor of Respondents. Thus, the Court finds no violation of Petitioner's procedural due process rights.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is DENIED, and this action is DISMISSED.

(2) The Clerk shall direct copies of this Order to all counsel of record.

DATED this 14th day of October, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge